JOHN J. KADLIC
Reno City Attorney
DONALD L. CHRISTENSEN
Deputy City Attorney
Nevada State Bar #1657
Post Office Box 1900
Reno, NV 89505
(775) 334-2050
*Attorneys for defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JEFFREY D. CHURCH,

                    Plaintiff,

        vs.

CITY OF RENO; CHARLES McNEELY,
individually and as City Manager; JERRY
HOOVER, individually and as City of Reno
Chief of Police; ONDRA BERRY, individually
and as City of Reno Deputy Police Chief; and
RONALD DONNELY, individually and as City
of Reno Police Department Lieutenant,

                    Defendants.                           /

Case No.: 3:12-cv-00601-RCJ-VPC

### Defendants' Reply In Support Of Motion To Dismiss

**1.   Introduction**

        In their motion to dismiss the First Amended Complaint defendants asserted that

USERRA did not confer a right to be free of an alleged hostile work environment

prior to November 21, 2011. Defendants also contended that Church's assertion of such a right

in this case should be barred by the doctrine of res judicata and the applicable statute of

limitations. Defendants further contended that the amendment which became effective on

November 21, 2011 is not applicable to alleged conduct which occurred more than eight years

earlier because the amendment was not intended to have a retroactive effect.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

-1-

1    In response to those arguments, Church asserts that the Ninth Circuit misinterpreted

2   USERRA in his 1997 action and that as a result, he was not able to raise his claim of a hostile

3   work environment under USERRA in the 2003 case.  Church further contends that no statute of

4   limitations has ever been applicable to any claim under USERRA.  Finally, Church asserts that

5   the amendment of 38 USC § 4303(2) was intended to be retroactive or was a clarification of the

6   law.

7    A consideration of the respective arguments should lead this Court to conclude that the

8   First Amended Complaint fails to state a claim on which relief can be granted and that

9   defendants' motion to dismiss should be granted.

10   **2.   The doctrine of res judicata bars the complaint.**

11    Defendants argued in their opening memorandum that USERRA did not confer a

12   right to be free of an alleged hostile work environment prior to November 21, 2011, the effective

13   date of the amendment of  the definitions set forth in 38 USC § 4303(2).  In response Church

14   contends that, on the one hand, he had the right to assert a hostile work environment claim prior

15   to that date because the Ninth Circuit "misinterpreted USERRA" in the 1997 action and

16   Congress' "clarification" of  USERRA through its amendment of § 4303(2) in 2011demonstrates

17   he always had that right.  On the other hand, Church argues that his complaint should not be

18   barred by the doctrine of res judicata because he claims he was not able to raise a claim for a

19   hostile work environment under USERRA in the 2003 action.  Church can't have it both ways.

20

21

22    Under res judicata, a final judgment on the merits of an action precludes the parties or

23   their privies from relitigating issues that were or could have been raised in that action.  *Holcombe*

24   *v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007). Res judicata applies when an earlier suit (1)

25   involved the same claim or cause of action as the later suit, (2) reached a final judgment on the

26   merits, and (3) involved identical parties or privies. *Mpoyo v. Litton Electro-Optical Systems,*

27   430 F.3d 985, 987 (9th Cir. 2005).

28

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1   Church agrees that the latter two elements have been met, but disputes the first element

2   contending that he was not able to raise his hostile work environment claim in the 2003 case

3   because "the Ninth Circuit misinterpreted USERRA and prevented him from doing so" in the

4   1997 action. Opposition, p. 8. [1]  Because it is undisputed that the instant case involves the same

5   facts that were at issue in the 2003 case, Church could have raised his claim of a hostile work

6   environment in the 2003 case, and the same claim made here should be barred.

7

8   Neither of Church's first two complaints makes any mention of the 2003 case. His

9   opposition mentions it in passing in one paragraph in his statement of facts. The 2003 case is

10  never mentioned again in the opposition for good reason; Church does not want this court to pay

11  any attention to the undisputed fact that the complaint there expressly alleged that he had been

12  deprived of his rights under federal law and that Church specifically identified USERRA as one

13  of the federal statutes which he alleged had been violated. Church certainly could have raised

14  his claim of a hostile work environment in the 2003 case.

15

16  Church's sole response to this argument is to contend that his hostile work environment

17  claim "could not have been raised" in the 2003 case because the Ninth Circuit did not recognize

18  his claim when he tried to assert it in his 1997 action to hold the City in contempt of the 1983

19  Consent Decree. He cites no authority for this assertion. There is no basis for finding that

20  Church was precluded from raising the claim in the 2003 case merely because of the Ninth

21  Circuit's holding in the 1997 action.

22

23  Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter

24  that never has been litigated, because of a determination that it should have been advanced in an

25

26

27

28

---

[1] Church refers to the Fifth Claim for relief as only asserting a claim under 42 U.S.C. sec. 1983. The fifth claim for relief alleged that "[t]he acts and omissions of defendants constituted a violation of Federal law, including, but not limited to, 42 U.S.C. sec. 1983." Ex. 8, p.7-8.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

earlier suit. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77, n.1 (1984) (citing *Restatement (Second) of Judgments*, § 24(Introductory Note)).  Section 28 of the *Restatement* states the exceptions to the rule that ordinarily would foreclose further litigation of a matter already decided in an earlier action.  Included in that section are the following exceptions which are directly applicable here:

> § 28 Exceptions to the General Rule of Issue Preclusion
>
>   Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
> . . .
> (2)  The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
> . . .
> (4)  The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
> . . .

The comment with respect to subsection (2) states that:

> When the claims in two separate actions between the same parties are the same or are closely related -- for example, when they involve asserted obligations arising out of the same subject matter -- it is not ordinarily necessary to characterize an issue as one of fact or of law for purposes of issue preclusion. If the issue has been actually litigated and determined and the determination was essential to the judgment, preclusion will apply. . . .  In such a case, it is unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of "law." . . .
> **On the other hand, if the issue is one of the formulation or scope of the applicable legal rule, and if the claims in the two actions are substantially unrelated, the more flexible principle of stare decisis is sufficient to protect the parties and the court**

1

> **from unnecessary burdens. A rule of law declared in an action
> between two parties should not be binding on them for all time,
> especially as to claims arising after the first proceeding has
> been concluded, when other litigants are free to urge that the
> rule should be rejected. Such preclusion might unduly delay
> needed changes in the law and might deprive a litigant of a
> right that the court was prepared to recognize for other
> litigants in the same position.** (Emphasis added).

2

3

4

5

6       Under the rule stated in subsection (2), Church was not precluded from raising the issue

7   of whether USERRA authorized recovery on a hostile work environment claim in the 2003 case.

8   The observations made by the Ninth Circuit in the 1997 case regarding the scope of USERRA

9
    were not essential to the judgment given the fact that the Court upheld the district court judgment
10

11   for reasons related to the nature of a contempt action.  Additionally, while alleged facts litigated

12   in the 1997 action were referred to in the 2003 case, the latter case was dependent upon alleged

13   acts that occurred subsequent to the 1997 action.  Church could have litigated the  scope of

14
     USERRA in the 2003 case based on these new allegations outside the context of the contempt
15

16   proceeding presented in the 1997 case.  There is no basis for Church's claim that his hostile work

17   environment claim "could not have been raised" in the 2003 case.

18       Church was also not precluded from relitigating the issue of USERRA coverage in the

19   2003 case under subsection (4) because of the different burdens of proof in the 1997 and 2003

20
     actions.  Church's burden in the 1997 action was to show by clear and convincing evidence that
21

22   the defendants violated a definite order of the court.  Ex. D, p.1.  Church's burden in the 2003

23   case was to establish a violation of a right conferred by USERRA by a mere preponderance of

24   the evidence.

25       Church was not precluded from litigating his claim of a hostile work environment in the

26
     2003 case.  He specifically identified USERRA as one of the federal laws he claimed was
27

28

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1    violated.  Church must now be precluded from litigating that same claim on the same facts in this

2    case and defendants' motion to dismiss should be granted.

3    **3.    The complaint is barred by the statute of limitations provided in 28 U.S.C. §**
     **1658(a)**

4

5        The First Amended Complaint should be dismissed because the statute of limitations on

6    Church's USERRA's claim under 28 U.S.C. § 1658(a) ran prior to the 2008 amendment to

7    USERRA which provided that no limitations period applies to USERRA claims.

8    Congress enacted 28 U.S.C. § 1658(a) on December 1, 1990, in response to criticism regarding

9
     the lack of a uniform federal statute of limitations.  Congress passed USERRA on October 13,
10
11   1994.  Church offers a multitude of reasons why he believes the statute of limitations defense

12   should not prevail.  None of his reasons provide a basis for denying defendants' motion.

13       **A.   Interpretation of the Veterans' reemployment statutes that preceded**
              **USERRA have no bearing on the issue of whether § 1658(a) was**
14            **applicable to a claim under USERRA**

15
         Church first asserts that the legislative history and court decisions involving the
16
17   Veterans' Reemployment Rights Act ( the "VRRA") enacted in 1968 should be relied on to

18   determine that § 1658(a) was not applicable to a claim under USERRA.  There is no basis for

19   any such reliance.

20
         Church first cites a number of cases for the proposition that Congress intended for
21
22   the doctrine of laches and not federal or state statute of limitations to apply to reemployment

23   actions under the VRRA.  None of the cases cited, at page 11-12 of the Opposition, provide any

24   support for Church's position that § 1658 was never applicable to USERRA.

25
         Many of the cited cases preceded the enactment of the catch-all federal statute of
26
27   limitations found in 28 U.S.C. § 1658(a) enacted on December 1, 1990.  Because there was no

28   general federal statute of limitations prior to the enactment of that statute, there was no reason

1  for any of those courts to discuss the possibility of an action being subject to any such non-

2  existent federal statute. None of the cases cited that were decided after that enactment make any

3  reference to that statute.  The absence of any discussion on that point in such cases provides no

4  support for Church's position.

5        Church next suggests that the discussion in *Wallace v. Hardee's Inc.,* 874 F.Supp. 374

6

7  (M.D. Ala. 1995), involving the lack of a reference to any federal statute of limitations in the

8  VRRA, is applicable to the lack of a reference to a federal statute of limitations in USERRA as it

9  existed prior to the enactment of the 2008 amendment to USERRA. Opposition, p. 12.  The two

10  situations are as different as night and day.

11        The defendant in *Wallace* argued that if Congress had meant to preempt the use of any

12

13  federal statute of limitations under the VRRA it would have done so, rather than expressly

14  barring only state statutes of limitation. The defendant suggested that a federal statute of

15  limitations from another federal law could be borrowed. The *Wallace* Court rejected that

16  argument because it believed that the VRRA's silence on the applicability of any federal statute

17
18  of limitations could be attributed to a Congressional intent to overrule case law which had

19  allowed the use of state statutes.  Because the Court was unaware of any case which allowed

20  borrowing a federal statute of limitations in the veterans' reemployment area, it concluded that

21  Congress's silence as to the applicability of any federal statute of limitations simply indicated it

22
23  had no reason to address that subject in the VRRA.  *Id.* at 376.  These observations have nothing

24  to do with the decision by Congress to refrain from including any provision in USERRA

25  disclaiming the applicability of 28 U.S.C. § 1658(a) because the circumstances are so different.

26        Less than four years before USERRA was enacted in 1994, Congress passed the federal

27  statute of limitations found in § 1658(a).  Congress provided thereby a catchall 4-year statute of

28

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1  limitations for actions arising under federal statutes enacted after December 1, 1990, which do

2  not include a limitations provision. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371

3  (2004*)*.  Prior to the enactment of § 1658, the settled practice was to adopt a local time limitation

4  as federal law if it was not inconsistent with federal law or policy to do so. *Id.* at 377.  That

5  practice caused many problems for the federal courts, such as being required to determine which

6  of the forum State's statutes of limitations was the most appropriate to apply to the federal claim

7  and to resolve conflict of laws questions. *Id.* at 378.  Even when courts were able to identify the

8  appropriate state statute, limitations borrowing resulted in uncertainty for both plaintiffs and

9  

10  defendants. *Id.* at 379.

11          Those problems led both courts and commentators to call upon Congress to eliminate

12  these complex issues by enacting federal limitations periods for all federal causes of action. *Id.*

13  at 379-380.  Congress answered that call by creating the Federal Courts Study Committee,

14  which recommended the enactment of a retroactive, uniform federal statute of limitations.

15  Although § 1658 applies only to claims arising under statutes enacted after December 1, 1990, it

16  

17  otherwise followed the Committee's recommendation.  *Id.* at 380.

18  

19          Less than four years after the enactment of § 1658, Congress enacted USERRA.  The

20  statute did not include an express statute of limitations. Congress's only reference to a limitations

21  period was that "[n]o State statute of limitations shall apply to any proceeding under this

22  chapter." USERRA § 2, 38 U.S.C. § 4323(c)(6) (1994). USERRA did not mention the federal

23  

24  statute of limitations in § 1658, nor did it expressly provide that claims under the new law were

25  exempt from any limitations period altogether. *Middleton v. City of Chicago,* 578 F3d 655, 658

26  (7ᵗʰ Cir. 2009). After Congress had exhaustively studied the issue of the need for a catch-all

27  federal statute of limitations and passed § 1658 less than four years earlier, it is impossible to

28  

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

believe that Congress was unaware of the applicability of that statute to USERRA when it was

enacted in 1994. In fact, Congress was well aware that it had recently enacted § 1658 that

established a catch-all limitations period governing any claim under a subsequent act. *Id.* at 660.

But Congress expressed no desire for any claim under USERRA to be immune from § 1658(a)'s

limitations period. *Id.* Under USERRA's predecessor, the VRRA, the express provision that no

*state* statute of limitations should apply effectively meant that no statute of limitations applied

because there was no federal statute of limitations until 1990. *Id.*

Because Congress enacted USERRA after it created the four-year limitations period in §

1658, it must be presumed that Congress knew that any new federal statute would be subject to

such a limitation unless it expressly provided otherwise. *Id.* at 662. Thus, if Congress wanted a

different limitations period to apply to USERRA--or none at all--it needed to say so. *Id.* And

this is precisely what Congress did in 2008, when it passed the Veterans' Benefits Improvement

Act and expressly stated "there shall be no limit on the period for filing the complaint or claim"

under USERRA. *Id.*

*Wallace* provides no support for Church's position. The observations by the court there

were made at a time when there was no federal statute of limitations applicable to a claim under

the VRRA. USERRA, however, was enacted less than four years after the enactment of the

catch-all federal statute of limitations found in 28 U.S.C. § 1658(a). With full knowledge of the

applicability of that statute to a claim under USERRA,   Congress chose not to state that any

different limitations period, or none at all, should be applicable to any such claim. The only

conclusion which can be drawn is that Congress did not intend for USERRA, as originally

enacted, to be exempt from the statute of limitations provided for in § 1658(a).

1    Church's reliance on the legislative history and court decisions involving the VRRA as a

2    basis for his assertion that Congress never intended that any claim under USERRA should be

3    subject to § 1658(a) is misguided.   To the contrary, the First Amended Complaint should be

4    dismissed because the statute of limitations on Church's USERRA's claims under 28 U.S.C. §

5    1658(a) ran prior to the 2008 amendment to USERRA.

**B.  The Department of Labor's view that USERRA is not subject to § 1658(a) is not entitled to deference.**

Neither the Department of Labor's comments to its proposed regulation codified as 20

CFR 1002.311 nor the regulation itself provide any basis for Church's assertion that claims

under USERRA were not subject to the statute of limitations provided for in § 1658(a).  All of

Church's arguments on this subject were comprehensively addressed in *Middleton, supra,* at

661-662, and will not be repeated here.  No court has disagreed with the conclusions reached in

*Middleton.*  Church has offered no new argument in this regard, nor has he identified any reason

not to follow those conclusions.  The conclusion reached in *Middleton* should be applied here.

**C.  The Veterans Benefit Improvement Act of 2008 did not establish that a claim under USERRA is not subject to the statute of limitations provided for in § 1658(a)**

On October 10, 2008, Congress enacted the Veterans' Benefits Improvement Act (the

"VBIA") *Id.* at 657.  The VBIA contained a provision stating that no limitations period shall

apply to USERRA claims: "If any person seeks to file a complaint or claim with the Secretary [of

Labor], the Merit Systems Protection Board, or a Federal or State court under this chapter

alleging a violation of this chapter, there shall be no limit on the period for filing the complaint

or claim." 38 U.S.C. § 4327(b).  Church contends that the enactment of this provision was

sufficient to establish that  Congress never intended USERRA to be subject to a statute of

limitations.  There is no basis for this assertion.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1    The sole basis for Church's assertion is that the Senate Committee Report states that the

2    "bill would clarify that the original intent of Congress was that USERRA would not be subject

3    to a federal or state statute of limitations period . . ." S.Rep. No. 110-449 at 26. This identical

4    argument was also addressed and rejected in *Middleton*. As the Court there stated, "a number of

5    factors may indicate whether an amendment is clarifying rather than substantive: whether the

6    enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity

7    existed prior to the amendment; and whether the amendment is consistent with a reasonable

8    interpretation of the prior enactment and its legislative history." *Id.* at 663-664.

9    The Court went on to state:

10   > We disagree with Middleton that the VBIA was clarifying
     > legislation. As we explained in the first portion of our opinion, *§
11   > 1658* applied to USERRA, and the text of the two statutes was not
     > ambiguous, leaving nothing for Congress to "clarify." Nor is the
12   > VBIA's amendment a reasonable interpretation of USERRA,
     > which was silent on whether *§ 1658* should apply, or its legislative
13   > history, which contained nothing to contradict the clear language
     > of *§ 1658*. Rather than "clarifying" that no statute of limitations
14   > applied to USERRA, the 2008 Congress substantively changed the
     > law so that *§ 1658* would not apply.
15
16   *Id.* at 664.

17   The Court stated additional reasons why it concluded that the new section was

18   insufficient to serve as "clarification" of a claimed original intent of Congress. It found the text

19   of § 4327(b) to be unambiguous and noted that because it did not mention clarification or

20   retroactivity, there was no reason for it to turn to the legislative history of the provision. But

21   even if that history was examined, the Court observed that reliance on a legislature's

22   observations regarding a prior legislature's intent is of marginal utility at best. *Id.(Citing*

23   *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 117 (1980)* (noting "the

24   oft-repeated warning that the views of a subsequent Congress form a hazardous basis for

25   inferring the intent of an earlier one.")).

26   The Court also observed that the only indication that perhaps Congress intended to clarify

27   USERRA or that the VBIA should have retroactive effect came in the Senate report referenced

28   above. *Id.* However, the Court next noted that the bill itself said nothing about the claimed

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1    purpose of clarifying the original intent of USERRA and that a court should proceed cautiously

2    when Congress declares its intent to clarify a law in the legislative history rather than the

3    amendment's text. *Id.* The *Middleton* Court observed that Congress was certainly aware of the

4    manner in which it could demonstrate its intent to retrospectively clarify the original meaning of

5    legislation by referring to the circumstances discussed in *Brown v. Thompson,* 374 F.3d 253,

6    259 (4th Cir. 2004). There Congress formally declared in the titles of the relevant subsections of

7    the amending act that the amendments of the original act were "clarifying" and "technical," and

8    expressly provided in the amending act that these technical and clarifying amendments be made

9    effective as if included in the enactment of the original act. The *Middleton* Court noted that the

10   VBIA contained no similar language. *Middleton, supra,* at 665.

11        The *Middleton* Court found, perhaps, most telling the fact that Congress had considered

12   similar amendments that would have expressly provided for retroactive application of the VBIA,

13   citing, *e.g.,* S. 3432, 110th Cong. § 7, specifically entitled "Clarification that USERRA Has No

14   Statute of Limitations," and stating that the amendment shall apply "to all actions or complaints

15   filed under [USERRA] that are pending on or after the date of the enactment of this Act"). The

16   Court concluded that Congress knew how to make the VBIA retroactive, and it chose not to do

17   so. *Id.* at 665.

18        The Court concluded that Congress, recognizing that USERRA did not discuss the

19   federal statute of limitations set forth in 28 U.S.C. § 1658(a), passed the VBIA to provide

20   expressly that no statute of limitations shall apply. Because Congress stopped short of bestowing

21   retroactive effect upon the new law, the Court declined to find § 4327(b) to be retroactive

22   without a clear directive. *Id.*

23        Church also asserts that if the amendment to USERRA was not a clarification of its

24   original intent, it should be construed to apply retroactively, citing *Letson v Liberty Mutual Ins.*

25   *Co.*, 523 F.Supp. 1221 (N.D. Ga. 1981). He relies on the argument that courts construed

26   VEVRAA's prohibition against the application of state statutes of limitations enacted in 1974 as

27   being retroactive under similar circumstances as the enactment of § 4327(b) in 2008 and that the

28   same analysis should be applied here. The circumstances are too dissimilar to do so.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1    In *Letson* the Court observed that the Report of the Senate Committee on Veterans'

2    Affairs noted that a purpose of the amendment was to have a policy of uniform availability of

3    enforcement rights for returned veterans throughout the country.   The Court also found that the

4    statute applied by its terms to "any proceedings" under the Act, and thus found there was no

5    language to impede retroactive application. *Id.* at 1225-1226.

6         In *Middleton,* the Seventh Circuit also noted that the Senate Committee Report

7    stated that the "bill would clarify that the original intent of Congress was that USERRA would

8    not be subject to a federal or state statute of limitations period . . ." 578 F3d at 664. However, it

9    also observed that the text of *§ 4327(b)* was unambiguous and did not mention clarification or

10   retroactivity.  In fact, the only hint in the text suggests that it applies *prospectively*: "If any

11   person *seeks to file* a complaint or claim . . . ." *Id.*  at 662.

12        In addition to these differences discussed in *Middleton*, there is also one

13   additional major difference between the circumstances underlying the respective amendments.

14   When USERRA was amended in 2008, 28 U.S.C. § 1658(a) was then in effect.  Common sense

15   would indicate that under circumstances where a statute of limitations is already in effect,

16   Congress would have expressly stated any intent to retroactively apply the chane in order to

17   establish that no claims would be subject to the existing statute of limitations.  Congress did not

18   do so.

19        Church has failed to identify any reason why *Middleton* should not be followed here.

20   Defendants are not aware of any court that has disagreed with the conclusions reached by the 7th

21   Circuit in *Middleton* in the more than 3 ½ years since the issuance of that opinion.  The

22   reasoning in *Middleton* is sound and its conclusions should be adopted by this Court.

### D.  Section 1658 applied to Church's claim under USERRA

23

24        Church contends that section 1658 does not apply to his claim brought under USERRA.

25   Presumably, Church specifically contends that section 1658 was not applicable to a claim under

26   USERRA prior to the enactment of 38 U.S.C. § 4327(b) in 2008 which provided that no

27   limitations period shall apply to USERRA claims.

28

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1    Church has no quarrel with defendants' assertion that his claim was "made possible by"

2    and "necessarily depend[s]" on USERRA, which means it arose under a cause of action enacted

3    after § 1658 was enacted as explained by the Supreme Court in *Jones*. Instead, the basis of

4    Church's argument is that because the initial clause of section 1658 provides, "Except as

5    otherwise provided by law," the limitations period established by section 1658 did not apply to

6    USERRA because case law prior to the enactment of section 1658 did not apply a statute of

7    limitations to claims under the VRRA. Church's argument provides no basis, for concluding that

8    claims under <u>USERRA</u> were not subject to the four-year limitations period provided for in

9    section 1658 prior to the enactment of 38 U.S.C. § 4327(b) in 2008.

10    None of the cases cited by Church discuss the applicability of § 1658 to a claim under

11    USERRA. None of those cases considered the effect of Congress's failure to expressly state any

12    intention that claims under USERRA not be subject to the limitations period provided in §1658.

13    The fact that courts found that claims under the VRRA were not subject to any statute of

14    limitations is not remarkable given that the VRRA expressly exempted claims there under from

15    any state statute of limitations and there was no catch-all federal statute of limitations in effect

16    prior to the enactment of § 1658.

17    The case that Church cites as authority for his proposition that mere case law was

18    intended to be referred to in the initial clause of section 1658 is *Douglass v. General Motors*

19    *Corp.*, 368 F. Supp. 2d 1220 (D. Kan. 2005). The case does not stand for that proposition. All the

20    *Douglass* Court did was to note that the U.S. Supreme Court had previously determined that the

21    six-month statute of limitations prescribed by 29 U.S.C. § 160(b) was applicable to hybrid §

22    301/unfair representation suits charging an employer breached a collective-bargaining agreement

23    and the union breached its duty of fair representation. *Id* at 1232-33. Because the court found

24    that a different federal statute of limitations was applicable, it did not apply section 1658. None

25    of the cases cited by Church involve a situation where the Supreme Court made a definitive

26    determination of the applicability of a different statute of limitations. The holding does not

27    support Church's position.

28

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

-14-

**4. The amendment of 38 U.S.C. § 4303(2) on November 21, 2011, was neither a clarification of existing law nor intended to be effective retroactively**

If this Court does not find that Church's claim is barred by the doctrine of res judicata or by the statute of limitations, the issue becomes whether the amendment of 38 U.S.C. § 4303(2) on November 21, 2011, was intended to be a clarification of existing law or effective retroactively. Specifically, the question which must be resolved is whether the addition of the phrase "the terms, conditions, or privileges of employment" to the definitions of the terms "benefit", "benefit of employment", or "rights and benefits" was intended to be a clarification of USERRA as it was originally intended or the conferral of a new right which was intended to be utilized retroactively to allow Church to pursue a claim based on acts that allegedly occurred between 1980 and 2003. Defendants contend that the intent of the amendment was only to confer a new right that would only operate prospectively.

Church's argument that the amendment was intended to clarify the original meaning of USERRA is not supported by the evidence . While the statute does refer to the "Clarification of benefits of employment covered under USERRA," there is no other language anywhere in the statute which expressly states that Congress intended the amendment to be a clarification of the original meaning of the statute. To the contrary, the joint explanation of certain provisions contained in the bill submitted by the House and Senate Committees stated that the change "would expand the definition of `benefit,' `benefit of employment,' or `rights and benefits'." *157 Cong Rec H 7652* , 7657. Exhibit 15. (emphasis added) An expansion of the referenced definitions does not indicate that the language of USERRA was merely being clarified, but rather that it was being enlarged. These same findings also indicate that the committees also understood that the amendment would have only a prospective effect by referring to the expanded right as a right "not to suffer . . ." which indicates a right which would only be applicable to conduct that had not yet occurred. *Id.*

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1    In addition to the foregoing points, that same joint explanation stated that the purpose of

2    the amendment was "to conform USERRA with the Supreme Court's decision in Mentor (sic)

3    Savings Bank vs. Vinson, 477 U.S. 57, 63-66 (1986) and DOL's request for such change in its

4    annual report on USERRA." *Id.* The Court in *Meritor* was called upon to construe the meaning

5    of the phrase "terms, conditions, or privileges of employment" as used in 42 U. S. C. § 2000e-

6
7    2(a)(1). The court held, eight years before USERRA was enacted, that this language in Title VII

8    was not limited to "economic" or "tangible" discrimination and that the phrase "terms,

9    conditions, or privileges of employment" evinced a congressional intent "'to strike at the entire

10   spectrum of disparate treatment of men and women'" in employment. The Court concluded that

11   a claim for a hostile work environment could be maintained under Title VII by reason of the

12
13   inclusion of this phrase.

14   The analysis by the Court in *Carder v. Continental Airlines*, 636 F.3d 172, 178-179. (5th

15   Cir. 2011), *cert denied,* 132 S. Ct. 369, 181 L. Ed. 2d 235 (2011), concerning the issue of

16   whether USERRA originally authorized a claim for a hostile work environment is equally

17   applicable to the question of whether the 2011 amendment was intended merely as clarification

18
19   of that statute.

20              Congress initially passed USERRA in 1994, years after *Meritor*
               was announced. Accordingly, Congress's choice to not include the
21             phrase "terms, conditions, or privileges of employment" or similar
               wording in USERRA weighs in favor of the conclusion that
22             USERRA was not intended to provide for a hostile work
               environment claim to the same extent as Title VII and other anti-
23             discrimination statutes containing that phrase. The significance that
               the Supreme Court has placed on this phrase--and particularly on
24             the specific word "conditions"--cannot be ignored. If Congress had
               intended to create an actionable right to challenge harassment on
25             the basis of military service under USERRA, Congress could
               easily have expressed that intent by using the  phrase "terms,
26             conditions, or privileges of employment" interpreted previously by
27             the Supreme Court. *See Merrill Lynch, 547 U.S. at 85-86, 126 S.*
28

1

2

3

> *Ct. at 1513*. The fact that Congress did not do so, even though
> USERRA was passed after the *Meritor* opinion, but instead chose
> to use the narrower phrase "benefits of employment," indicates that
> Congress intended to create a somewhat more circumscribed set of
> actionable rights under USERRA.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

     The analysis by the *Carder* Court is also important because of the fact that the

Department of Labor specifically identified that case as the impetus for its recommendation to

Congress.  Document 19-1, p.23 of 26.  Given the importance of that case in making that

recommendation, one must assume that the case was reviewed prior to the statutory amendment.

The *Carder* Court went into great detail as to why it concluded that Congress did not originally

intend to confer the right to make a claim for a hostile work environment.  If Congress really

intended to remove any doubt that its amendment was intended to be either a clarification of

original intent or a new provision that would be effective retroactively, it needed to say so in

specific terms in a fashion that would not allow another court to conclude that it did not intend

one of those results.  Even though there were countless ways that could have been utilized to

clearly establish the intent that Church asserts was present, Congress failed to utilize any of

them.

19

20

21

22

23

24

25

26

27

     Under the circumstances presented, the mere use of the term "Clarification of benefits of

employment covered under USERRA" and the DOL's request for clarification was insufficient

to clearly express any claimed Congressional intent that the amendment was intended to be either

a clarification of original intent or a new provision that would be effective retroactively.

Therefore, the amended language cannot be used to allow Church to maintain an action for a

hostile work environment based on actions that are alleged to have occurred during a period

some nine to thirty two years before the filing of the complaint here.

28

//

### 5.   Conclusion

Church could have raised his claim for a hostile work environment under USERRA when he filed his lawsuit in the 2003 case.  There was nothing that prevented him from doing so. The same facts that are alleged in the present case were at issue in the 2003 case. Church specifically claimed his rights under USERRA had been violated.  Church's attempt to relitigate that claim here is contrary to the central purposes of the doctrine of res judicata of conclusively resolving disputes and protecting parties against being harassed by repetitive actions.  The complaint should be found to be barred by the doctrine of res judicata.

If the complaint is not so barred, the action is precluded by the application of the catch-all 4 year federal statute of limitations found in 28 U.S.C. § 1658(a).  Even though Congress enacted that statute less than four years prior to the enactment of USERRA, it failed to except any action there under from its application.  Because the statute of limitations ran on Church's claim prior to the enactment of legislation in 2008 that specifically provided that no limitations period was applicable to USERRA claims, his claim is barred.

If this action is not dismissed for either or both of these reasons, the amendment of 38 U.S.C. § 4303(2) on November 21, 2011, does not apply to the factual allegations of the First Amended Complaint.  That amendment was never intended to serve as the mere clarification of the original Act nor as legislation intended to be applied retroactively.

//

//

//

//

1    Church had his chance to assert all his claims against these same defendants based on the

2    same facts alleged here.  He did not prevail in that suit.  Church has not been employed by the

3    City in almost 10 years.  The time has come to stop the litigation.  Defendants' motion to dismiss

4    should be granted.

5

6    DATED this __11th__ day of April, 2013.
                                    JOHN J. KADLIC
7                                   Reno City Attorney

8

9

10                                  By: Donald L. Christensen
                                        DONALD L.CHRISTENSEN
11                                      Deputy City Attorney
                                        Nevada State #1657
12                                      Post Office Box 1900
13                                      Reno, Nevada  89505
                                        (775) 334-2050
14                                      *Attorney for defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

1

**CERTIFICATE OF SERVICE**

2      Pursuant to FRCP 5(b), I certify that I am an employee of the RENO CITY

3  ATTORNEY'S OFFICE, and that on this date, I am serving the foregoing document(s) on

4  the party(s) set forth below by:

5  _____    Placing an original or true copy thereof in a sealed envelope placed for collection
            and mailing in the United States Mail, at Reno, Nevada, postage prepaid,
6            following ordinary business practices.

7  _____    Personal delivery.

8    X        CM/ECF electronic service

9

10 _____    Facsimile (FAX).

11 _____    Federal Express or other overnight delivery.

12 _____    Reno/Carson Messenger Service.

13

14 addressed as follows:

15

16 Brian J. Lawler, Esq.                Donald Kudler, Esq.
   Pilot Law P.C.                       Cap & Kudler
17 701 B. Street, Suite 1170            3202 W. Charleston Blvd.
   San Diego, CA 92101                  Las Vegas, NV 89102
18 *Attorney for Plaintiff*             *Attorney for Plaintiff*

19      DATED this __11th__ day of April, 2013.

20

21

22                               /s/ Katie Wellman___
                                 Katie Wellman
23                               Senior Legal Assistant

24

25

26

27

28

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

-1-